United States District Court
Eastern District of Michigan
Southern Division

The United States of America,

                Plaintiff,

v.

Sarah Chadwick,

                Defendant.
                                       /

Case No. 2:23-cr-20653

Hon. Stephen J. Murphy, III

**Government's Motion for Pretrial Detention**

      The government has charged defendant Sarah Chadwick with distribution of child pornography, 18 U.S.C. § 2252A(a)(2), and possession of child pornography, 18 U.S.C. § 2252A(a)(5)(B). Chadwick's phone contained images of minors engaging in sexual activity, including infants and toddlers being penetrated. Chadwick told agents that they would find 100 to 150 images of child pornography on her phone and admitted that some of the images on her phone depicted children being raped and being forced to engage in painful sexual acts. She admitted sending child pornography to others, and agents inspecting her phone found that she had in fact done so.

The search of her phone also revealed numerous conversations of a very disturbing nature in which Chadwick encouraged pedophilia and bragged about having encouraged others to engage in it. But Chadwick was not merely engaging in bizarre sexual fantasies. *Chadwick was conversing with at least two pedophiles and encouraging their predatory behavior.*

The magistrate judge nevertheless ordered Chadwick's release. Because Chadwick, however, presents an obvious danger to the community by distributing child pornography and by encouraging pedophiles to molest children, this Court should order Chadwick's detention.

**I. Facts**

The United States relies on its factual proffer during the November 28, 2023, detention hearing, as well as additional facts which it details below. The government is profferring from the criminal complaint and affidavit, the pretrial services report and addendum, information relayed to the undersigned by the case agent (Amy Hirina of the FBI), a summary of an FBI interview with Chadwick dated November 16, 2023, electronic messaging between Chadwick and other individuals in 2021

and 2023 (Government Exs. 1 through 5-B.), and an e-mail from a pretrial services officer (Government Ex. 6).[1]

The FBI executed a federal search warrant at Chadwick's Pontiac residence and for her cellular telephone on November 8, 2023. The phone search revealed numerous images (stills and videos) of minors engaging in sexual activity, including infants and toddlers being penetrated. The search further revealed that Chadwick had sent many of these images to other individuals via electronic messaging apps.

Chadwick told law enforcement that the FBI would find child 100 to 150 images of child pornography on her phone. She admitted that some of the images depicted children being raped and forced to engage in painful sexual acts. Chadwick said she used the apps Wickr, Whatsapp, and Telegram to receive and send child pornography, and has been doing so for a couple years.

Chadwick also admitted she photographed her live-in boyfriend's daughter in the bathtub when the minor was approximately eight years old. In the photograph, the daughter was nude (photographed from

---

[1] The government intends to file a motion for leave to file the exhibits under seal. Because of the urgency of this filing, it is transmitting the exhibits to the Court's chambers via e-mail contemporaneous with filing this motion.

behind). Chadwick admitted sending the image to others on the Internet. The boyfriend's daughter is now 14, meaning this incident happened around six years ago.

Chadwick admitted she had been communicating with a man in Texas who told her he had masturbated onto his second-grade daughter. As a result of the investigation into Chadwick, law enforcement did further investigation and discovered that the man in Texas possessed child pornography, and is now facing charges. Notably, the man does have an eight-year-old daughter. (He confirmed that he had masturbated near his daughter, but claimed he did not ejaculate *onto* her.)

Law enforcement discovered communications between Chadwick and the Texas man. See Government Exs. 1-2. In those conversations, both Chadwick and the Texas man discuss child molestation in favorable terms, including the molestation of the man's daughter.

A communication between Chadwick and a man in Ohio showed Chadwick endorsing the Ohio man's calling himself a "pedo daddy." He described interest in transmitting his bodily fluid into children and Chadwick assisting in the process, with Chadwick responding "fuck yes

daddy" and "mmm yes daddy. I want to have family orgies." See R. 1: Complaint, PageID.4-5. The Ohio man with whom Chadwick communicated has been charged with federal crimes including travel with intent to engage in illicit sexual conduct, 18 U.S.C. § 2423(b), and coercion or enticement, 18 U.S.C. § 2422(b).

Another person conversing with Chadwick expressed an interest in raping minorities. Chadwick did not discourage this behavior, rather she asked if Jews were a minority. See Government's Ex. 3. Chadwick later told the same person that she "just convinced a man to molest his nieces[.]" See Government's Ex. 5.

The phone search further revealed that Chadwick had also sent via electronic messaging a graphical flyer that encouraged child molestation, with information about when and how to penetrate children, including small children. The blacked-out areas on the left and right of the flyer contained child pornography. See Government's Ex. 4.

A detention hearing occurred before Magistrate Judge R. Steven Whalen on November 28, 2023. After listening to proffers and arguments by the government and Chadwick's counsel, Magistrate Judge Whalen ordered Chadwick's release on an unsecured bond with

5

conditions but stayed the release order until 12 p.m. the following day. The government now requests this Court order Chadwick's detention. Additional facts may appear in the Argument portion of this brief.

## II. Standard

This Court reviews a magistrate judge's pretrial order *de novo*. See 18 U.S.C. § 3145, *United States v. Yamini*, 91 F. Supp. 2d 1125, 1128-29 (S.D. Ohio Feb. 24, 2000) (collecting cases). There is a rebuttable presumption that no conditions will reasonably assure the safety of the community when the defendant faces a charge of distributing child pornography. 18 U.S.C. § 3142(e)(3)(E).

Under the Bail Reform Act, 18 U.S.C. §§ 3141-3156, a "judicial officer shall order the [pretrial] detention" of a defendant if the officer "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). To detain a defendant, there must be either clear and convincing evidence that the defendant's release poses a risk of danger to the community. 18 U.S.C. § 3142(f).

In evaluating whether pretrial detention is warranted, the Court must consider the following factors: (1) the nature and circumstances of the offense; (2) the weight of the evidence as it relates to dangerousness and risk of flight; (3) the defendant's history and characteristics, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

### III. Argument

*The nature and circumstances of the offense weigh heavily in favor of detention.*

Chadwick admitted distributing child pornography over a two-year period. Distribution is so serious it carries a five-year mandatory-minimum penalty.

Chadwick's phone contained images of minors, *including infants and toddlers,* forced to engage in painful sexual acts. See also R.1: Complaint, PageID.5 (wherein Chadwick, after exchanging numerous files, says to another person "I sent you a few infants, i hope you dont mind * * * And a few rapes[.]").

*The weight of evidence as it relates to dangerousness.*

7

The weight of the evidence likewise supports detention. Chadwick is a dangerous person. *By itself*, the horrific nature of the child pornography she possessed and distributed demonstrates that. As the Sixth Circuit has observed regarding child pornography:

> We have previously recognized that [r]eceipt, distribution, and possession of child pornography are extremely dangerous to the community. [T]he materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation. Further, increased circulation provide[s] an economic motive to produce new images and films, leading to the sexual abuse of yet more children.

*United States v. Hoilman*, No. 22-6108, 2023 U.S. App. LEXIS 9947, at *3-4 (6th Cir. Apr. 24, 2023) (internal quotations and citations omitted).

But Chadwick's dangerousness goes way beyond the "usual" dangerous of a person who possesses and distributes child pornography. The communications on her phone revealed that Chadwick was in active communication with two pedophiles, encouraging their activities.

For example, Chadwick admitted to the FBI she had been communicating with a man in Texas who told her he had masturbated onto his second-grade daughter. When the man mentioned molesting

8

his daughter, Chadwick responded by sending him a message that she was fondling him (the modern-day equivalent of phone sex).

Another example was Chadwick's conversations with the Ohio man now facing charges for travel with intent to engage in illicit sexual conduct, 18 U.S.C. § 2423(b), and coercion or enticement, 18 U.S.C. § 2422(b). When he discussed transmitting bodily fluid into children and Chadwick assisting in the process, Chadwick responded "fuck yes daddy" and "mmm yes daddy. I want to have family orgies." See R. 1: Complaint, PageID.4-5.

Chadwick boasted to a third conversant – a different person than the Ohio and Texas pedophiles — that she "just convinced a man to molest his nieces[.]" Government's Ex. 5-A. And, of course, there is the flyer she distributed to at least one other person that combines child pornography (blacked out) with a how-to guide for penetrating children. See Government's Ex. 4.

The magistrate judge, in reviewing the government's detention request, missed the mark when he minimized Chadwick's communications as mere expressions of bizarre or merely troubling

9

sexual fantasies. Chadwick has both distributed child pornography and *encouraged others to victimize innocent children.*

Congress made distributing child pornography a presumption offense — 18 U.S.C. § 3142(e)(3)(E) — because it determined that in most cases, the danger child pornographers pose to the community is much more serious than that of the average accused felon. Here, Chadwick's danger, by both distributing child pornography and promoting pedophilia, is much more dangerous than the average felon or the average child pornographer.

### *Chadwick's history and characteristics weigh heavily in favor of detention.*

Chadwick is a grown woman of 30 years old. The government does not dispute that she suffered a traumatic head injury and has had lasting side effects. But Chadwick's medical issues do not diminish the fact that she has been distributing child pornography for two years, by her own admission. It does not diminish the fact that she distributed a flyer that glorifies pedophilia and explains how to rape children. It does not undermine or eliminate the fact that six years ago, Chadwick captured the nude image of an eight-year-old and distributed that image electronically. Chadwick's behavior was not a solitary lapse in

10

judgment owing to a medical condition or intoxication, or a misperception of the circumstances. She is not analogous to a one-time drunk driver or a household employee who stole $200 from his employer.

Possessing child pornography "is not a crime that *happens* to a defendant. It is not a crime of inadvertence, of pop-up screens and viruses that incriminate an innocent person. Possession of child pornography instead becomes a crime when a defendant knowingly acquires the images[.]" *United States v. Bistline*, 665 F.3d 758, 765 (6th Cir. 2012). Chadwick was not merely possessing child pornography, but distributing it and encouraging the victimization of children.

### *Bond conditions will not eliminate the danger Chadwick poses to the community*

The magistrate judge unfortunately premised his ruling on a perception that Chadwick's mother could and would adequately police her 30-year-old daughter's behavior. The mother's residence is not a suitable place for Chadwick.

The mother's entry into the bail discussion was notable because, at the time of the initial bail report, Chadwick claimed a "strained" relationship with her mother and described her as "very unpleasant."

11

See (Initial) Bail Report, p. 2. Indeed, until only a few days ago (before the bail addendum issued), the mother was unwilling to allow Chadwick to live at her home. *Id.*

Having had an apparent change of heart, the mother was willing to allow Chadwick to live with her. According to the pretrial services officer, the mother "has WiFi capability in the home but does not know how to change the passcode, *but would allow the defendant to show her how to change the passcode*[.]" Government's Ex. 6 (emphasis added).

While the government concedes that the mother may receive pretrial services' assistance in password-protecting her home network, the mother's lack of technological savvy and her initial belief that the would-be subject of Internet restrictions could password-protect herself *out* of her mother's network reveals a great naivete. The undersigned does not say this to attack the mother's fitness as a parent or criticize her in any way.

But obtaining new Internet devices and identifying other sources and places of Internet access (beyond her mother's router) is not difficult for the average adult. Unfortunately, a person who is

12

significantly less technologically savvy than Chadwick is not equipped to police *Chadwick*'s use of technology.

Finally, the magistrate judge appeared to assume that Chadwick's mother, upon discovering her daughter accessing the Internet, would readily report her daughter to the authorities. Most mothers will not readily facilitate their children's trip to jail, and there is nothing to indicate that this mother is different from most mothers.

The magistrate judge thus took two leaps of faith: first, that Chadwick's mother has the ability to police her daughter's online activity, and, second that she is the highly unusual mother who will turn in her own daughter upon discovering a violation. This Court should not make the same errors.

## IV. Conclusion

As the government noted above, Congress chose to make distributing child pornography a presumption offense. It seems highly doubtful that it trusted child pornographers to comply with restrictions on their Internet use. And, as the government has shown, Chadwick's scary behavior goes way beyond the mere downloading and transmission of child pornography. Chadwick does not rebut the

presumption that there are no conditions that will reasonably assure the safety of any other person or the community.

                              Respectfully Submitted,

                              DAWN N. ISON
                              UNITED STATES ATTORNEY

                              /s/ Louis F. Meizlish
                              Assistant United States Attorney
                              211 W. Fort St., Suite 2001
                              Detroit, Michigan 48226-3211
                              (313) 226-97845
                              louis.meizlish@usdoj.gov

November 28, 2023

## Certificate of Service

I hereby certify that on November 28, 2023, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification to the attorney of record.

/s/ Louis F. Meizlish
Assistant United States Attorney
211 W. Fort St., Suite 2001
Detroit, Michigan 48226-3211
(313) 226-97845
louis.meizlish@usdoj.gov